UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MALIK EDWARDS,

                         Plaintiff,

       v.                                              **DECISION AND ORDER**
                                                       10-CV-0322

C.O. RICHARD PISTNER, et al.,

                         Defendants.

## I.  INTRODUCTION

Plaintiff Malik Edwards ("Plaintiff"), a former inmate in the care and custody of New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that Correctional Officers ("COs") Richard Pistner ("Pistner"), John Cortright ("Cortright"), David Lakas ("Lakas") and Robert Hansen ("Hansen") (collectively, "Defendants"), failed to protect him from being attacked by another prisoner while incarcerated at Attica Correctional Facility on August 25, 2007.  (Compl. (Docket No. 1) ¶¶ 28-32, 34, 45.)

Presently before this Court is the Defendants' motion for summary judgment.[1] (Docket No. 38.)  Having considered the parties' written submissions and the applicable law, this Court grants Defendants' motion and dismisses the complaint.

---

[1] This Court previously referred this matter to the Honorable H. Kenneth Schroeder, Jr., to hear and report upon all dispositive motions.  In the interest of expediency, that order is vacated and the matter resolved by this Decision and Order.

## II. BACKGROUND

### A.      Factual Background and Procedural History

The following facts are not in dispute unless otherwise noted. The Court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to Plaintiff. See Spiegel v. Schulmann, 604 F.3d 72, 77, 81 (2d Cir. 2010).

On the morning of August 25, 2007, CO Pistner was releasing inmates from Company 9, A-block for "morning chow" when he heard a commotion. In the hall he witnessed Plaintiff and inmate Bolton involved in an altercation. He ordered the inmates to "break it up" and called for backup immediately. Pistner observed Bolton swinging a broom at Plaintiff, who in turn reached for a hand-made knife and swung it at Bolton. After the backup arrived, officers surrounded the inmates and again ordered them to break it up. (Pistner Decl. ¶¶ 5-7, 11.) CO Pistner asserts that he could not have unilaterally stopped the altercation, because an attempt to do so would have required him to take control of two armed inmates simultaneously, potentially increasing the danger of injury or escalation. (Id. ¶¶ 8-10.) Instead, COs Pistner and Cortright, who subsequently arrived, diffused the situation without engaging in use of force. (Def. Stmt. ¶¶ 33-38.)

In contrast, Plaintiff asserts that Pistner  "stood and watched Plaintiff Edwards get attacked and intentionally failed to intervene." (Pl. Opp'n Stmt. ¶ 31). He further asserts that Defendants Hansen, Cortright, and Lakas were all present while he was pummeled in the face, hit with a hard object, and had hot oil thrown on him. (Pl. Decl. ¶¶ 15-17, 19.) Plaintiff asserts that Defendants conspired and orchestrated this attack in retaliation for his previously filed grievance. (Id. ¶¶ 14, 20.)

Following the altercation, a metal, razor-like weapon with a handle fashioned out of tape was recovered from Plaintiff. It was photographed, identified, and bagged as evidence. (Cortright Decl. ¶ 24 & Ex. B.) Plaintiff states that Defendants "planted" the weapon on him. (Pl. Opp'n Stmt. ¶ 32.) Plaintiff was subsequently offered protective custody, which he refused. (Docket No. 22 at 78.)

An Unusual Incident Report indicated that Plaintiff suffered a small nick to the left ear; a half-inch laceration to the left eye; and burns beside the right eye, right neck and right chest; and Bolton had lacerations to the ear and hand. (Id. at 72.) Pistner filed a misbehavior report charging Plaintiff with, inter alia, violent conduct, assault on an inmate, fighting, weapon, and refusing a direct order. (Id. at 85). As documented by the correctional facility, Plaintiff refused to attend the Tier III disciplinary hearing arising out of those charges. (Id. at 87.)

Defendants Lakas and Hansen deny being present for the altercation.  CO Lakas was involved in recovering pieces of the broom used by Bolton in the assault. (Lakas Decl. ¶ 6.) CO Hansen was not assigned to the A-Block, nor was he in the A-block on August 25, 2007, had no personal knowledge of the incident, did not respond thereto, and his signature was not on the misbehavior report stemming from the incident. (Hansen Decl. ¶ 2-5.) Plaintiff claims to have seen Hansen in A-Block during the incident. (Pl. Opp'n Stmt. ¶ 17.)

Pistner and Cortright, who witnessed the incident, state that they had no prior knowledge that the assault would occur, no indication that there was a dispute between the two inmates, and were not advised by Plaintiff or anyone else that an assault was imminent. (Def. Stmt. ¶¶ 19-25.)  Plaintiff asserts that Defendants not only had prior

knowledge, but actually conspired and orchestrated the attack. He also states that he advised supervisory officials at Attica that his safety was at risk. (Pl. Opp'n Stmt. ¶¶ 14, 19-26.)

Defendants explain that, upon entering DOCCS custody, each inmate is interviewed and given the opportunity to impart safety concerns, such as being victim-prone. However, at no time did Plaintiff request different housing or protective custody, discuss safety concerns with a counselor, or report known enemies while at Attica. (Def. Stmt. ¶¶ 39-48.) Defendants state that they were not aware of any correspondence pre-dating the incident that would have alerted them to the danger of the assault involving Plaintiff. (Def. Stmt. ¶ 50.)

Plaintiff, on the other hand, claims that "counselors are security friendly or intimidated by security staff," and when "[s]ecurity staff . . . received notice of threats to [his] safety," they were "deliberately indifferent to these notices." (Pl. Opp'n Stmt. ¶ 46.) He explains that after giving his counselor verbal notice of the threats made toward him, he filed a grievance pursuant to the counselor's "indifferent" advice. (Id. ¶ 48.) He also claims that he was unable to pursue other written channels to file a complaint regarding the threats because the address of the Inspector General was not posted in his cell block. (Id. ¶ 51.)

Alyson Romesser ("Romesser"), Inmate Grievance Program ("IGP") Supervisor at Attica, submits a declaration describing the procedure available to prison inmates to seek administrative redress for their grievances. (Romesser Decl. ¶ 2.) Under New York regulations, the IGP procedure allows for an inmate to submit a complaint about the substance or application of any written or unwritten policy, regulation, procedure, or rule

of the prison system, and about employee misconduct. (<u>Id.</u> ¶ 3; 7 NYCRR § 701.2(a-e)). DOCCS Directive # 4040 explains the three-step grievance and appeal procedure, and requires that all three levels of review must be completed in order for an inmate to exhaust his administrative remedies. (<u>Id.</u> ¶¶ 3-4, 9, Ex. A.)

Plaintiff did not pursue all three levels of review. (<u>Id.</u> ¶ 12, Ex. B (IGP print out indicating no grievance filed on or about August 25, 2007, nor one regarding failure to protect)). Plaintiff responds that he did not complete the three-step procedure because Attica staff prevented him, in some unspecified manner, from appealing his grievances in order to thwart his exhaustion efforts. (Pl. Opp'n Stmt. ¶¶ 6, 12.)

## III. DISCUSSION

### A.   General Principles of Law

#### 1.   Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Id.</u> In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

Further, "[i]t is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). "A pro se plaintiff, however, cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." Belpasso v. Port Auth. of NY & NJ, 400 Fed. Appx. 600, 601 (2d Cir. 2010); see Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996) (summary judgment properly entered against pro se plaintiff who failed to oppose motion with admissible evidence after receiving plainly worded warning of the consequences of such failure). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U .S. at 252.

## 2.    42 U.S.C. § 1983

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured

by the United States Constitution and federal law. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393–94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n. 3 (1979)).

**B.    Defendants' Motion**

Defendants move for summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies, his failure to protect claim fails as a matter of law, and that Defendants are entitled to qualified immunity. (Def. Mem. at 2-17.) Because this Court agrees with Defendants that Plaintiff failed to exhaust his administrative remedies, the remaining issues will not be discussed.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is . . . mandatory. Prisoners must now exhaust all 'available' remedies[.]"); Hargrove v. Riley, No. 04–CV–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

7

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). In the event the defendant establishes that the inmate plaintiff failed to fully complete the administrative review process prior to commencing the action, the plaintiff's complaint is subject to dismissal. Pettus v. McCoy, No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006); see also Woodford, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." Woodford, 548 U.S. at 95; accord, Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007).

In New York, formal exhaustion of administrative remedies for prison inmates requires compliance with the detailed three-step grievance and appeal procedure mentioned above. See Morrison v. Parmele, 892 F.Supp.2d 485, 487 (W.D.N.Y. 2012) (citing 7 NYCRR § 701.5), aff'd, 523 Fed. Appx. 51 (2d Cir. 2013). At the time of the incident at issue in this action, the grievance process outlined at § 701.5 provides that: (1) the inmate must submit a written complaint to the Grievance Clerk within 21 calendar days of the alleged occurrence; the Grievance Clerk then submits the complaint to the Inmate Grievance Resolution Committee ("IGRC") for investigation and review; (2) if the IGRC denies the grievance, the inmate may appeal to the superintendent of the facility by filing an appeal with the IGP clerk; (3) after the superintendent issues a decision, the inmate may appeal to the Central Office Review Committee ("CORC"), which makes the final administrative determination. See Turner v. Goord, 376 F.Supp.2d 321, 323 (W.D.N.Y. 2005). Generally, "[a] prisoner has not exhausted his administrative remedies until he goes

8

through all three levels of the grievance procedure." <u>Hairston v. LaMarche</u>, Case No.05 Civ. 6642, 2006 WL 2309592, at *7 (S.D.N.Y. Aug.10, 2006) (citing cases).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." <u>Ruggiero v. Cnty. of Orange</u>, 467 F.3d 170, 175 (2d Cir. 2006) (citing <u>Giano v. Goord</u>, 380 F.3d 670, 677 (2d Cir. 2004)). Thus, an inmate's failure to exhaust administrative remedies may be excused where:

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

<u>Ruggiero</u>, 467 F.3d at 175 (citing <u>Hemphill v. New York</u>, 380 F.3d 680, 686 (2d Cir. 2004)).[2]

Plaintiff concedes that he did not exhaust his failure to protect claim, but argues that officials at Attica prevented him from doing so by failing to file his grievance and/or subsequent appeal. (Pl. Mem. at 3-4.) In order to prevail on an argument that there were special circumstances because the officials did not file the grievances or respond to them, Plaintiff must show that he still followed the remaining steps in the grievance procedure. <u>See, e.g.</u>, <u>Veloz v. New York</u>, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional

---

[2] Recent decisions have noted that, in light of <u>Woodford</u>, the "estoppel" and "special circumstances" aspects of the <u>Hemphill</u> analysis may no longer be valid. <u>See</u> <u>Amador v. Andrews</u>, 655 F.3d 89, 102 (2d Cir. 2011) ("We have questioned whether, in light of <u>Woodford</u>, the doctrines of estoppel and special circumstances survived." (citing cases)). Assuming the Second Circuit's exceptions to the exhaustion requirement have withstood the Supreme Court's decision in <u>Woodford</u>, they do not apply to his case.

officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."), aff'd, 178 Fed. Appx. 39 (2d Cir. 2006); Atkins v. Menard, No. 11–CV–0366, 2012 WL 4026840, at *4, (N.D.N.Y. Sept.12, 2012) (finding that plaintiff failed to exhaust where he had the "ability, and indeed the duty, to appeal the IGRC's nonresponse (to his grievance) to the next level, including CORC, to complete the grievance process."); Gill v. Frawley, No. 02–CV–1380, 2006 WL 1742738, at *11 & n. 67 (N.D.N.Y. June 22, 2006) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance.").

Here, there is no record of a grievance related to his failure to protect claim arising from the August 25, 2007 incident. (Romesser Decl. ¶¶ 12-14, Ex. B.) There is no documentary evidence that Plaintiff attempted to file a written grievance or a verbal complaint as he contends was made to his DOCCS counselor. Nor does he identify the DOCCS staff purportedly involved in failing to process his grievance and/or appeal. Simply put, Plaintiff does not provide any evidence indicating that he made a reasonable attempt to follow the grievance procedures pertaining to the assault incident. Therefore, the Court must conclude that Plaintiff did not make a reasonable or timely attempt to make a complaint of failure to protect and, as such, has failed to show he exhausted all administrative remedies. See Nunez v. Goord, 172 F. Supp. 2d 417, 429 (S.D.N.Y. 2001) (where a plaintiff's allegations that grievance attempts were blocked by officials "stand[s] alone and unsupported" against evidence that no grievances were filed, dismissal for the failure to exhaust is appropriate).

Plaintiff also cannot show that he did not understand the grievance procedures. His inmate grievance history, provided by Defendants, indicates that he pursued 94 grievances to completion from 2002 to 2011. Plaintiff was therefore not only familiar with the three-step procedure but was able to successfully utilize it on multiple occasions, including the time period up to and after the assault. (Romesser Decl. ¶¶ 12-13, Ex. B.)  There are no other circumstances alleged or indicated by the record that would apply to Plaintiff's case excusing the exhaustion requirement.

Because Plaintiff failed to exhaust his administrative remedies before commencing this action, Defendants are entitled to summary judgment.

## IV. CONCLUSION

Defendants have established their entitlement to summary judgment dismissing the complaint in its entirety, and Plaintiff fails to raise a triable issue of material fact in opposition in opposition to Defendants' exhaustion argument. The complaint is therefore dismissed.

## V.  ORDERS

IT HEREBY IS ORDERED, that portion of this Court's prior order referring this matter to the magistrate judge to hear and report on all dispositive motions (Docket No. 32) is VACATED;

FURTHER, that the Defendants' motion for summary judgment dismissing the complaint (Docket No. 38) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: November 4, 2015
      Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                United States District Judge